# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| ALLEN J. BLACK, | |
|              Plaintiff, | 2:13–cv–01258-LDG-VCF |
| vs. | |
| | **REPORT & RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
|              Defendant. | |

      This matter involves Plaintiff Allen J. Black's appeal from Defendant Carolyn W. Colvin's final decision denying Plaintiff's social security benefits. (Compl. (#1) at 2:6-8[1]).  Currently before the Court is Plaintiff's Motion for Reversal or Remand (#14), and the Defendant's Cross-Motion to Affirm (#15).

## BACKGROUND

      Plaintiff Allen Black applied for Social Security Disability Insurance benefits on July 30, 2010. A.R. 150-155.  Plaintiff's application was denied initially on October 21, 2010 and upon reconsideration on February 7, 2011. (*See* A.R. at 95-98, 103-06).  Plaintiff and his representative appeared for a hearing before Administrative Law Judge ("ALJ") Barry H. Jenkins (A.R. 53-92, 147-148), but the ALJ issued an unfavorable decision on May 10, 2012 (A.R. 19-36).  On May 17, 2013, the Appeals Council denied Plaintiff's request for review (A.R. 1-5), thus making the ALJ's decision the final decision of the

---

[1] Parenthetical citations refer to the Court's docket and the administrative record.

Commissioner.  On July 16, 2013, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (*See* Compl. (#1)).

In its determination to deny social security benefits to the Plaintiff, the ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. § 416.920. (A.R. 19-36).   The ALJ first determined that the Plaintiff last met the insured status requirement of the Social Security Act on December 31, 2006.  (A.R. 21, Finding 1).  At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of May 1, 2004 through December 31, 2006 (the date he was last insured).  (A.R. 21, Finding 2).  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine, right shoulder impingement syndrome with rotator cuff tear, and status post right amputation of the right index finger.  (A.R. 21, Finding 3).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (A.R. 29, Finding 4).

The ALJ found that Plaintiff had the residual functional capacity for a reduced range of light work, including: (1) occasionally climbing ladders, ropes, or scaffolds; (2) occasionally kneeling, crouching, crawling, stooping; and (3) occasionally reaching overhead with the dominant right upper extremity.  (A.R. 30, Finding 5).  At step four, the ALJ found Plaintiff unable to perform his past relevant work as a military recruiter and security guard based on vocational expert testimony.  (A.R. 34, Finding 6).  At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on his age, education, work experience, and residual functional capacity.  (A.R. 35, Finding 10).  In doing so, the ALJ defined Plaintiff as an individual closely approaching advanced age on the date last insured, with at least a high school education, able to communicate in English, and found transferable skills not material to the determination of disability. (A.R. 35, Findings

7-9).  The ALJ considered Medical-Vocational Rule 201.28, which provides a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as a mail clerk, garment sorter, or a cleaner.  (A.R. 36).  Based on all these findings, the ALJ found Plaintiff not disabled from May 1, 2004, the alleged onset date, through December 31, 2006, the date last insured, and denied his application for supplemental security income. (A.R. 36, Finding 11).

## STANDARD OF REVIEW

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart,* 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g).

The District Court's review of the Commissioner's decision is limited.  The court reviews the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Id. and Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  Substantial evidence is defined as "more than a mere scintilla but less than preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).

The issue before the Court is, therefore, narrow.  It is not whether the Commissioner could reasonably have reached a different conclusion.  It is, rather, whether the decision is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence); *see*

3

*also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that if the evidence supports more than one interpretation, the court must defer to the Commissioner's interpretation).  Stated simply, the Commissioner's decision will be upheld if it has any support in the record.  *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

## DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 416.914.  If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful activity that exists in the national economy. *Reddick v. Chater*, 157 F.3d 721 (9th Cir. 1998).

The ALJ follows a five-step sequential evaluation process to determine whether an individual is disabled.  *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at any step the ALJ determines that he can make a finding of nondisability, then a decision is rendered against the claimant and no further evaluation is required.  *See* 20 C.F.R. § 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, (2003).

The five-step process is as follows.  First, the claimant must prove that he is not currently engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must prove that his medically determinable impairment is "severe" in that it "significantly limits his

4

physical or mental ability to do basic work activities." *See* 20 C.F.R §§ 404.1520(c), 416.920(c).  Third, the claimant must prove that his impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1, and meet the duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(d), 404.1525, 404.1526, 416.909, 416.920(d), 416.925, and 416.926.

In the fourth step, the claimant must prove that he is incapable of meeting the physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).  However, before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).[2]  In making this finding, the ALJ must consider all the relevant evidence such as all the symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p, 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration for the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, and 06-3p.

If the claimant satisfies his burden under the previous four steps, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Yuckert*, 482 U.S. at 141-42.  The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and past work experience. *Yuckert,*

---

[2]  The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* SSR 96-8p.

*482 U.S.* at 141-42. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Id.* If the Commissioner proves that suitable work exists, the claimant is given the chance to prove that he cannot, in fact, perform that work.

## DISCUSSION

Plaintiff challenges the Commissioner's final decision on three grounds. First, that the ALJ erred when it granted limited weight to the mental assessments of two physicians in its determination that Plaintiff suffered no legally severe mental impairment. Second, that the ALJ erred when it granted limited weight to the assessment of Dr. Cestkowski regarding Plaintiff's upper right extremity. Third, that the ALJ erred when it failed to address inconsistencies between the vocational expert's testimony and that description of occupations in the Dictionary of Occupational Titles regarding reaching. For the reasons discussed below, the Court finds that the ALJ's decision regarding the denial of Plaintiff's claim for social security disability is supported by substantial evidence.

**I.    The ALJ's Decision to Give Limited Weight to Dr. Oates' and Dr. Belmont's Assessments is Supported by Substantial Evidence.**

The Court finds that the ALJ's decision to give limited weight to Doctors Oates and Belmont is supported by substantial evidence. For the purposes of his section, the Court's analysis proceeds in three parts: (1) a review of the parties' arguments; (2) a discussion of the relevant law; and (3) the Court's finding that the Plaintiff failed to show that his alleged mental impairment was severe during the relevant time period.

**A.  The Parties' Arguments**

Plaintiff claims that the ALJ erred in granting little or no weight to the assessments of Doctors Oates and Belmont in finding that Plaintiff suffered no legally severe mental impairment during his

6

insured period.  (Mot. for Reversal (#14) at 12-16).  Plaintiff contends that Doctors Oates and Belmont found his mental condition to be severe, and as examining physicians and mental health professionals, their assessments should carry more weight than that of non-examining physicians (such as psychologist Jocelyn Fuller).   (*Id*. at 12:21-13:8, 15:17-16:4).   Plaintiff further argues that, although their examinations took place after his insured period ended in 2006, both doctors' reports attribute his alleged mental impairment to an incident from 1991-2001, well before the end of his insured status. (*Id*. at 13:12-14).  Finally, Plaintiff adds that Dr. Oates' medical diagnosis was based on diagnostic tests and medical findings, and not on Plaintiff's subjective reports, and the mere presence of inconsistencies between his assessment and other medical opinions is no reason to discredit Oates. (*Id*. at 14-16).

In response, the Commissioner contends that the ALJ properly rejected the opinions of Doctors Oates and Belmont in its determination that Plaintiff suffered no legally severe mental impairment during his insured period.  (Mot. to Affirm (#15) at 4-9).   She argues that Plaintiff must prove he was disabled as of December 31, 2006 based on medical evidence, not on his own statement of symptoms. (*Id*. at 3:22-4:4).  She highlights the fact that Dr. Oates examined the Plaintiff on July 27, 2009, and Dr. Belmont examined Plaintiff on March 12, 2012, both well outside the relevant time period, stating that their assessments of Plaintiff's current functioning are irrelevant in determining Plaintiff's prior functioning.  (*Id*. at 4:16-18, 5:5-8, 9:7-9).  The Commissioner further alleges Dr. Oates conducted no diagnostic testing, and thus his opinion did not have the support of objective evidence, but was instead based on Plaintiff's unreliable subjective statements.  (*Id*. at 6:7-21).  She also argues that Dr. Oates' opinion that Plaintiff was "unemployable" was inconsistent with her own "relatively mild clinical findings," and in any case, unemployability is a determination reserved for the Commissioner, not a physician. (*Id*. 7:1-15).  Finally, she notes that Dr. Oates' opinion was contradicted by State agency

psychologist, Jocelyn Fuller, who found that Plaintiff had no severe mental impairment during the relevant time period.  (*Id*. at 7:16-26).

The Commissioner also cites the record, which shows that treatment records during the relevant time of 2004-2006, Plaintiff's depression screening was generally negative.  (*Id*. at 5:13-14, 8:23-24).  In particular, the Commissioner notes that at a December 18, 2006 exam immediately before his insured period expired, Plaintiff reported his mood was normal and that he thought he was a "pretty even keel," and his mental status revealed essentially normal findings, all of which provides support for the ALJ's rejection of Dr. Oates' opinion regarding the time period at issue.  (*Id*. 5:13-6:6:2).

### B.  Relevant Law

At step two, a claimant must prove that his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities."  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. § 404.1508.  Plaintiff must prove that he was disabled prior to the date on which his disability insured status expired.  *Morgan v. Sullivan,* 945 F.2d 1079, 1080–81 (9th Cir.1991); *Vincent v. Heckler,* 739 F.2d 1393, 1394 (9th Cir.1984).

### C.  Analysis

The medical evidence of Plaintiff's mental condition prior to December 31, 2006 is minimal.  On an examination conducted on November 6, 2006, to screen for depression (Plaintiff's alleged mental impairment), Plaintiff was asked "in the past two weeks, have you been bothered by feeling down, depressed or hopeless," to which he responded, "No."  (A.R. 259).  On December 18, 2006, the Plaintiff was examined by mental health nurse practitioner Frances Doyle.  (A.R. 240-43).   During that examination, Plaintiff stated that he was unsure why he was there, and that he considered himself to be

"pretty even keel." (A.R. 240). He also stated that he "[did] not work because he [did not] have to," not because he was unable to work. (A.R. 240). Doyle's assessment was that Plaintiff was alert, attentive, cooperative, reasonable, that he had no unusual, suicidal, violent thoughts, and he was not a danger to himself or to others. (A.R. 242). Her evaluation was that Plaintiff had a mood disorder due to a medical condition. (A.R. 243). However Plaintiff was not interested in taking an antidepressant at that time.[3] (*Id.*). The report contained no medical evidence of a severe mental condition which would prevent Plaintiff from working.

Subsequent to the expiration of Plaintiff's insured status, he was evaluated by various medical personnel, all of whom diagnosed him with depression or dysphoric mood. (*See* A.R. 959, 904-09, 901-02, 1162, 878-79, 794, 790-92,787, 747-48, 1202). These evaluations correspond with the assessment of Jocelyn Fuller, the Disability Determination Service reviewing psychologist, who diagnosed Plaintiff with mood disorder due to medical conditions and personality disorder, neither of which is a "severe" impairment recognized by the Social Security Administration. (A.R. 584-96).

Neither Dr. Oates nor Dr. Belmont's evaluations establish that Plaintiff's mental condition existed during the relevant time period. In Doctor Oates' examination of Plaintiff on July 27, 2009, she stated that his symptoms of depression "started in the military, and have worsened in the last year and half." (A.R. 412). However, she offers no medical proof for this statement, other than the Plaintiff's own statements. No diagnostic testing was done at that time. (A.R. 412). Dr. Belmont's exam on March 12, 2012 also states that Plaintiff had a breakdown in the military, solely based on Plaintiff's own word. (A.R. 1206). Contrary to Plaintiff's argument, it was apparently not Dr. Belmont's intention to establish an onset date in the record in that she refused to answer the form question regarding "if [she

---

[3] In fact, according to the Plaintiff's own statement, he was "probably" not taking any psychiatric medications between 2004 and 2011. (A.R. 1207).

had] sufficient information to form an opinion within a reasonable degree of medical or psychological probability as to past limitations, on what date were the limitations [she] found above first present." (A.R. 1214).

While it is true that "a treating physician's opinion is entitled to substantial weight,"[4] in this case, considering that neither doctor provided objective reasons for their assessment of Plaintiff's prior condition, it is appropriate for the ALJ to give their assessment limited weight.  (*See Matin v. Comm'r of Soc. Sec. Admin.*, 478 F. App'x 377, 378-79 (9th Cir. 2012), where the court gave limited weight to a treating physician's opinion because it was based on the Plaintiff's subjective account and provided little explanation or rationale).  At issue is not that the psychologists took Plaintiff's subjective reports of symptoms or complaints at face value, but that they accepted the date of onset on Plaintiff's word rather than on medical records from the relevant time period.  *See E.R.H. v. Comm'r of Soc. Sec. Admin,* 384 F. App'x 573, 575 (9th Cir. 2010) (rejecting treating physician's opinion as to the onset of the Plaintiff's disability because it was not based on treatment notes from the relevant time period and because the doctor did not treat the Plaintiff until 18 years later; *Lair-Del Rio v. Astrue*, 380 F. App'x 694, 695 (9th Cir. 2010) (finding that the burden of proof of disability was not met where the record was devoid of relevant medical records from the period, and letters from doctors years later were unpersuasive).  Therefore, the Court finds that the Plaintiff has failed to show that his alleged mental impairment was severe during the relevant time period.

In any case, Plaintiff's argument that he had a legally severe mental impairment is irrelevant because, in making a disability determination, the ALJ must consider the combined effect of all of the Plaintiff's impairments:

---

[4] *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228.

10

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8P, 1996 WL 374184 (July 2, 1996).  The ALJ found that Plaintiff had severe impairments, including degenerative disk disease of the lumbar spine, right shoulder impingement syndrome with rotator cuff tear, and status post right amputation of the right index finger.  (A.R. 21, Finding 3). Therefore, it is unnecessary to prove that Plaintiff's mental impairment was also severe, as his mental impairment would have been considered in the ALJ's RFC anyway.[5]  The Court finds that the ALJ's determination that the Plaintiff failed to prove that his mental impairment was severe during the required period is supported by substantial evidence.

## II.    The ALJ's Decision to Give Limited Weight to Dr. Cestkowski's Assessment is Supported by Substantial Evidence.

Plaintiff claims that the ALJ failed to set forth specific and legitimate reasons for rejecting or giving limited weight to the portion of opinion by treating physician Dr. Richard Cestkowski regarding his assessment of overhead lifting and manipulative limitations with Plaintiff's right hand.  (Mot. for Reversal (#14) at 16-17).  Specifically, Plaintiff alleges that, while the ALJ found he could occasionally reach overhead with his dominant right arm, Dr. Cestkowski found him never capable of doing so, and only occasionally fingering, feeling, pushing, and pulling with the right hand.  (*Id*. at 16:11-20). Plaintiff also contends that although the ALJ found that the right index finger impairment was legally severe at step two, the ALJ failed to articulate the specific limitation that stems from that condition in

---

[5] *See also* V.E. Testimony (A.R.) at 86-90 (vocational expert testifying that Plaintiff's inability to interact with the public excluded certain jobs).

11

his RFC determination. (*Id*. at 17:1-4).  Finally, Plaintiff argues that Dr. Cestkowski's assessment was at least partially based on his review of a right shoulder MRI from 2004, as well as x-rays, thus rooting the assessment in Plaintiff's insured period, and not just relevant to the 2012 examination.  (*Id*. at 17:5-9).

In response, the Commissioner contends that the objective medical evidence supports residual functional capacity for a reduced range of light work.  The Commissioner emphasizes that the examination by Dr. Cestkowski was on March 26, 2012, more than five years after his insured status expired.  (Mot. to Affirm (#15) at 9:14-16).  The Commissioner noted that although Plaintiff's right index finger was partially amputated, according to Dr. Cestkowski, he was still able to make a fist, had good finger dexterity, and his grip strength was five out of five, and was able to sort, handle, and use paper/files.  (*Id*. at 9:16-18 and 11:5-7).  The Commissioner highlights that Plaintiff last received treatment for his finger in 1992, but he continued to work for nearly a decade afterwards.  (*Id.* at 11:2-5).  Finally, the Commissioner contends that the ALJ's explanation for not giving full weight to Dr. Cestkowski's opinion is supported by the lack of medical evidence.[6]  (*Id.* 10:17-24 and 11:2-3).

The Court finds that the ALJ's RFC finding is supported by substantial evidence.  Plaintiff's only argument for why the RFC is not supported is the fact that his treating physician, Dr. Cestkowski, opined that he could never engage in overhead reaching and could only occasionally manipulate the right hand.  However, the Court finds that the ALJ appropriately declined to fully credit that portion of Dr. Cestkowski's opinion because it was inadequately supported by the objective medical evidence relevant to the period in question.

Plaintiff must prove that he was disabled prior to the date on which his disability insured status expired.  *Morgan v. Sullivan,* 945 F.2d 1079, 1080–81 (9th Cir.1991); *Vincent v. Heckler,* 739 F.2d

---

[6] The Commissioner also noted that a further reason to reject Dr. Cestkowski's opinion is that it is contrary to Plaintiff's own statements. (*Id.*) However, those statements are unrelated to Plaintiff's right shoulder or hand, which are at issue here.

12

1393, 1394 (9th Cir.1984).  Where "medical reports during the relevant time period make only limited

references to medically observed limitations on functional capacity...they fall short of the substantial

medical evidence required to establish a disability listed in or equal to those appearing in appendix 1."

*Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).   Here, Plaintiff's examination by Dr.

Cestkowski was five years after Plaintiff's insured status expired.  (A.R. 1218).   Dr. Cestkowski's

assessment of Plaintiff's right shoulder was based on a physical examination and x-rays from 2012,

which he noted was "consistent with an MRI scan of the right shoulder in 2004."[7]   (A.R. 1221).

However, it did not contain the necessary specific assessment of Plaintiff's functional capacity prior to

December 31, 2006. *See Johnson*, 60 F.3d, at 1432 (finding a doctor's retrospective assessment

"conclusory" because it did not include a specific assessment of the Plaintiff's functional capacity prior

to the expiration of the Plaintiff's insured status).  An impression of an x-ray of Plaintiff's right shoulder

from December 25, 2007 revealed "no bone and joint abnormality," indicating that the injuries apparent

in the 2012 x-ray may not have been present as of 2007 (A.R. 1218).  Therefore, the Court finds that the

ALJ provided specific and legitimate reasons for not finding Dr. Cestkowski's entire opinion warranted

controlling weight.

In any case, Plaintiff's arguments regarding ALJ's determination of his residual functional

capacity are moot regarding his physical impairments because he also did not prove that his impairments

during the relevant time period met or medically equaled the criteria of an impairment listed in 20

C.F.R. Part 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1509, 404.1520(d), 404.1525, 404.1526, 416.909,

416.920(d), 416.925, and 416.926.   At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met the criteria of any listed impairments.  (A.R. 29,

---

[7] The impression of the MRI taken on July 19, 2004 included: (1) partially torn musculotendinous junction of the
infraspinatus tendon; and (2) impinging bony anatomy with laterally and anteriorly down sloping acromion as
well as acromioclavicular joint hypertrophy with inferiorly projecting spurs (A.R. 293).

Finding 4).  In order for an amputation to meet the criteria of an impairment, both of Plaintiff's hands would have to have been amputated, or one hand amputated in combination with one lower extremity. 20 C.F.R. §404, Subpart P, App. 1.

Here, Plaintiff's amputation is restricted to his right index finger.  (A.R. 1218).   For his right shoulder to qualify as a "major dysfunction of a joint," Plaintiff would have to not only show that he had gross anatomical deformity, chronic joint pain and stiffness, and limitation of motion with appropriate medical imaging, but it would need to be combined with either a major peripheral weight-bearing joint (resulting in inability to ambulate effectively) or involve extreme loss of function of both upper extremities.  20 C.F.R. §404, Subpart P, App. 1.  There is no medical evidence of extreme loss of function of Plaintiff's left shoulder, nor any injury to a weight-bearing joint.  Therefore, the Court finds that the ALJ correctly determined that Plaintiff did not have an impairment or combination of impairments that met the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, and thus Plaintiff did not meet his burden of proof at step three.

### III.   No Conflict Exists Between the Vocational Expert's Testimony and the *Dictionary of Occupational Titles*.

Plaintiff argues that the ALJ erred in failing to resolve inconsistencies between the vocational expert's description of identified jobs and the *Dictionary of Occupational Titles* ("*DOT*") with regards to reaching.  (Mot. for Reversal (#14) at 17-19).  Specifically, Plaintiff claims that while the ALJ found that he could only reach overhead with his right upper extremity "occasionally," the vocational expert selected jobs which require frequent reaching.  (*Id.* 18:3-10).  Citing the *Selected Characteristics of Occupations* ("SCO") and Social Security Ruling 85-15, he defines "reaching" as "extending the hands and arms in any direction." (*Id.* 18:8-10).  Finally, Plaintiff argues that if there is any conflict between the vocational expert's testimony and the descriptions of jobs in the *DOT*, that the ALJ must obtain from

the vocational expert a reasonable explanation for the apparently conflict, which it failed to do.  (*Id.* 19:1-11).

In response, the Commissioner argues that there is no conflict between the ALJ's finding that the Plaintiff can only occasionally reach overhead with his right arm and the *DOT* reaching requirements for mail clerk, garment sorter, and cleaner.  (Mot. to Affirm (#15) at 11-13).  The Commissioner emphasizes that while the positions do require frequent reaching, the *DOT* does not specify that the reaching must occur with both hands or that it must occur in a particular direction.  (*Id.* at 12:3-7).  Therefore, the Commissioner sees no inconsistency between the vocational expert's testimony and the *DOT*. (*Id.* at 12:23-25).

According to the Social Security Administration, when a vocation expert "provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the [*DOT*]."  SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000).  Soc. Sec. Rul. 00-4p explicitly requires the ALJ to inquire whether a vocational expert's testimony conflicts with the *DOT*, and if a conflict does exist, then the ALJ must determine if the vocational expert's explanation for the conflict is reasonable.  (*Id.*).  Failure to do so, however, can be harmless error if no actual conflict exists.  *Massachi v. Astrue*, 486 F.3d 1149, 1155 n. 19 (9th Cir. 2007).

The Court finds that there was no conflict between the *DOT* and the testimony of the vocational expert.  No authority exists on this issue within this district, and other district courts have reached conflicting conclusions.[8]  However, the Court finds the arguments in favor of the Commissioner's ruling

---

[8]  *Compare Symons v. Astrue,* 2012 WL 4097759 *5 (D. Idaho Aug. 13, 2012) (court rejected argument that occasional reaching with the left hand conflicted with *DOT*'s requirement for frequent reaching) *with Bermudez v. Astrue*, 2011 WL 997290 *3-4 (C.D. Cal. 2011) (court accepted argument that occasional reaching with the right arm conflicted with *DOT*'s requirement for constant reaching).

15

more persuasive.   In the *Selected Characteristics of Occupations*, the definition of "reaching" is "extending hand(s) and arm(s) in any direction."   *SCO*, App. C.   The placement of the plural in parenthesis may indicate that "reaching" incorporates single hand/arm use, as well as dual hand/arm use.[9]   While the *DOT* requires frequent reaching (1/3-2/3 of the time) for all three jobs, the job descriptions do not indicate a necessity for frequent reaching with *both* arms, nor specifically require overhead reaching.[10]   (*See DOT* codes 209.687-026, 222.687-014, and 323.687-014).   Therefore, while the ALJ failed to inquire whether a conflict existed between the vocational expert's testimony and the *DOT*, its failure to do so is harmless error, since no actual conflict exists.

Plaintiff's limitations were sufficiently addressed by the vocational expert in his testimony. According to the ALJ's RFC assessment, Plaintiff can continuously reach in all directions with both arms, with the exception that he can only occasionally reach overhead with his right arm.  (A.R. 30). Unlike *Bermudez*, where the court remanded because "[vocational expert] did not specifically address whether Bermudez's limitation on overhead reaching…would preclude any of the jobs she identified,"[11] here the vocational expert was aware of the differing limitations between Plaintiff's right and left arms, and specifically excluded medium level jobs because of them.  (*See generally* V.E. Testimony (A.R.) at 86-90, especially 89).   Plaintiff's counsel did not ask any follow up questions to the vocational expert regarding differing arm limitations, or voice any objections to the testimony of the vocational expert such differentiations.   (*See generally* A.R. 90-91).   Therefore, the Court finds that the Plaintiff's limitations do not significantly affect his ability to perform certain positions as presented by the

---

[9]  *But see* Social Security Ruling 85-15, which uses the same definition of "reaching" without the use of parenthesis.  SSR 85-15, 1985 WL 56857 (1985).

[10]  *See Brister v. Colvin*, 2013 WL 2318842 *11 (D. Or. May 27, 2013) (rejecting argument that a position's requirement of frequent reaching exceeded the Plaintiff's limitation to occasional overhead reaching because the *DOT* did not indicate that the position required the reaching to be overhead).

[11]  *Bermudez*, 2011 WL 997290 at *4.

16

vocational expert, and thus there is sufficient evidence in the record to support the ALJ's finding that Plaintiff was not disabled and could perform work that exists in the national economy.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Plaintiff Allen J. Black's Motion for Reversal (#14) be DENIED.

IT IS FURTHER RECOMMENDED that Defendant's Cross-Motion to Affirm (#15) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 30th day of June, 2014.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE